UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROSALIND RHODES, on behalf of | ) | |
| MICHAEL L. RHODES[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-130 |
| | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Judgment of Plaintiff and

Memorandum in Support. [Docs. 13 & 13-1]. Also before the Court are Defendant's Motion for

Summary Judgment and Memorandum in Support [Docs. 14 & 15]. Plaintiff Rosalind Rhodes

seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision

of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the

Commissioner") on behalf of her deceased husband, Michael Rhodes.

---

[1] The original Plaintiff in this case, Michael Rhodes ("Decedent"), died on November 26, 2013, while this case was pending at the administrative level. [Tr. 433B-C]. Decedent's attorney substituted Decedent's wife, Rosalind Rhodes ("Plaintiff"), as the party on his claim and in this civil action. [Tr. 433B; Doc. 11].

1

Decedent first applied for benefits on August 10, 1994, and after being denied both initially and upon reconsideration, requested a hearing and was awarded retroactive benefits from November 1, 1993. [Tr. 51-58]. In July 2000, Decedent failed to comply with Defendant's request for documents and his benefits were terminated. [Tr. 124]. Decedent filed a new application on October 4, 2005 for disability insurance benefits ("DIB"). [Tr. 114-19]. Decedent's application was denied initially and upon reconsideration. [Tr. 96-99]. He timely filed a request for a hearing and went before ALJ K. Dickson Grissom on April 22, 2008 in Knoxville, Tennessee and again on August 13, 2008. [Tr. 93; 390; 414]. ALJ Grissom issued an unfavorable decision on October 20, 2008. [9-16]. Decedent filed an appeal of the decision, which the Appeals Council ("AC") declined to review on June 18, 2010. [Tr. 17-26; 2-5].

Decedent appealed the case to the District Court, which remanded the case on August 5, 2011 for further consideration of the opinion of Decedent's treating physician, Dr. Ann Carter. [Tr. 462-75]. On December 20, 2011, the AC vacated ALJ Grissom's decision and remanded the case to the ALJ for further proceedings consistent with the order of the District Court. [Tr. 436B, 459-61]. On December 21, 2012, ALJ James Dixon found that Decedent was "not disabled" and issued an unfavorable decision to that effect. [Tr. 568-74]. Decedent appealed ALJ Dixon's decision, and on July 15, 2013, the AC informed Decedent it was assuming jurisdiction of the case. [Tr. 575-81; 434-34B].

On December 3, 2013, Plaintiff's counsel informed the AC that Decedent died on November 26, 2013, and that Decedent's wife, Rosalind Rhodes, should be substituted as the party on his claim. [Tr. 433B]. On January 28, 2014, the AC issued it decision, finding

2

Decedent was "not disabled" for the relevant period of October 1, 2000 (the alleged onset date) through September 30, 2005 (the date last insured). [Tr. 422-33A].

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 31, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    APPEALS COUNCIL FINDINGS

The Appeals Council made the following findings:

> 1. The claimant met the special earnings requirement of the Act on October 1, 2000, the date the claimant stated he became unable to work and continued to meet them through September 30, 2005.
>
> 2. The claimant has the following severe impairments: degenerative disc disease, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 3. The claimant's impairment resulted in the following limitations on his ability to perform work-related activities: the claimant could perform work of a light level of exertion as defined in 20 CFR 404.1567(b), except that he could only occasionally climb stairs and ramps, ladders or scaffolds, and could occasionally use his left foot for operation of foot controls.
>
> 4. The claimant's subjective complaints are not fully credible for the reasons identified in the body of this decision.
>
> 5. The claimant is unable to perform past relevant work.
>
> 6. The claimant was age 53 on September 30, 2005, defined as closely approaching advanced age. The claimant has a high school education. The claimant's past work is skilled. The issue of

3

transferability of work skills is not material in view of the claimant's age and residual functional capacity.

7. Based on the claimant's residual functional capacity, age, education, and work experience, 20 CFR 404.1569 and Rule 202.14, Table No. 2, 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's exertional and nonexertional impairments do not allow him to perform the full range of light work, using the above-cited Rule as a framework for decisionmaking, there were significant numbers of jobs in the national economy which the claimant could have performed during the period at issue.

8. The claimant is not disabled as defined in the Social Security Act at any time through September 30, 2005, the last day on which he met the earnings requirements of the Act.

[Tr. 433-33A].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB.  An individual qualifies for DIB if he or she

(1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for

DIB; and (4) is disabled.  42 U.S.C. § 423(a)(1). "Disability" is the inability "[t]o engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied

4

for work.

Id. at (a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Decedent bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

5

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

6

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Decedent bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. Medical Evidence

Decedent was born on October 5, 1951 and obtained a GED in 1973. [Tr. 114, 216]. His past relevant work experience includes almost fifteen years as a machinist and utility operator. [Tr. 185]. Decedent ceased working in 1993 due to chronic lower back pain and three herniated discs. [Tr. 191, 371].

Decedent initially sought treatment from Dr. Alan Weems, a licensed neurosurgeon. [Tr.

7

371-73].  Dr. Weems diagnosed Decedent with "[m]ulti-level disc disease, right L3-4 herniated disc, possible central L4-5 herniated disc, possible left L5-S1 herniated disc with a complicated radiculopathy picture." [Tr. 373].  Dr. Weems noted that Decedent's back pain was exacerbated by a recent fall and suggested conservative treatment with disability for one month.  [Id.].  In May of 1995, Dr. Weems assessed that Decedent's condition caused sufficient symptoms to meet the Listings criteria of Appendix 1, Subpart P due to his lumbar spondylosis and degenerative disc disease.  [Tr. 41].  Decedent never returned to work.  [Tr. 396].  On June 29, 1995, ALJ Richard Gordon awarded Decedent benefits, relying on Dr. Weem's opinion and finding Decedent's complaints of pain fully credible.  [Tr. 54-57].

Decedent sought treatment with physicians at Oliver Springs Family Physicians in 1998, and Dr. Ann Carter served as Decedent's primary care physician from 2002 through 2008.  [Tr. 246-56, 328-40, 428].  Decedent sought treatment with Dr. Carter for chronic low back pain, depression, anxiety, high blood pressure, sinus issues, migraines, and weight loss.  [Tr. 246-56, 328-40].  A MRI of the lumbar spine in 2007 revealed "[e]xtensive degenerative changes in the lumbar spine with facet joint hypertrophy in the mid and lower lumbar spine.  Anterior osteophytes are demonstrated throughout the lumbar spine.  Disc narrowing noted as well." [Tr. 248].  On June 25, 2008, Dr. Carter submitted a medical source questionnaire finding that his spine disorder satisfied Listing 1.04A Degenerative Disc Disease due to his "loss of left Achilles reflex; pain and spasm in muscles of leg on left." [Tr. 27].  She concluded that his condition related back to October 2000 and that it would not improve within twelve months.  [Id.].

Dr. Carter referred Decedent to Dr. Joseph Kennedy in 2004 for his depression and

anxiety. [Tr. 328, 335]. Dr. Kennedy treated Decedent from 2004 through 2006, diagnosing him with bipolar disorder and depression. [Tr. 290-99].

Dr. William Kenney conducted a mental status exam on March 24, 2006. [Tr. 319-21]. He noted that Decedent reported feelings of paranoia, anxiety, and depression after receiving almost six million dollars from his father, who won the Powerball Lottery in 2000. [Tr. 320-21]. Decedent reported that he subsequently lost approximately four million dollars in various business deals and that this loss had increased his paranoia. [Tr. 321]. Dr. Kenney diagnosed depression and found Decedent's concentration and persistence, social interaction, adaption, and ability to remember and understand were not significantly limited. [Id.].

On April 10, 2006, Dr. Victor L. O'Bryan submitted a Mental Residual Functional Capacity Assessment. [Tr. 300-16]. He diagnosed Decedent with depression. [Tr. 307]. Dr. O'Bryan found that Decedent was mildly limited in his activities of daily living and social functioning, moderately limited in his ability to maintain concentration, persistence, or pace, and had no episodes of decompensation. [Tr. 314]. Dr. O'Bryan also noted that Decedent's wife reported his daily activities included laundry, driving, shopping, preparing simple meals, and paying bills. [Tr. 316].

Dr. Horace Edwards submitted a psychiatric review analysis on August 3, 2006. [Tr. 275-87]. He found that Decedent had a history of affective disorders and bipolar syndrome but found there was insufficient evidence to determine Decedent's functional limitations based on his lack of treatment records and functional information. [Tr. 275, 278, 285-87]. On August 15, 2006, Dr. Celia M. Gulbenk submitted a Medical Consultant Analysis, but was unable to

9

establish a RFC. [Tr. 267-74]. She noted that Decedent's '[p]ain appeared to be in control on F[l]exeril and Naprosyn." [Tr. 274].

Dr. Eva Misra conducted an examination and submitted a Medical Source Statement on May 21, 2008. [Tr. 236-44]. She found Decedent could frequently lift and carry up to 20 pounds, continuously lift and carry up to 10 pounds, stand and walk for up to 4 hours, and sit for up to 6 hours at a time. [Tr. 236-37]. She assessed that Decedent's symptoms would not last for twelve consecutive months. [Tr. 241]. During the examination, Dr. Misra determined that Decedent's gait, station, and mobility were normal, but his "lumbar spine flexion was decreased to 75 degrees because of pain and effort. Extension decreased to 15 degrees and right lateral and left lateral flexion decreased to 15 degrees. He had positive CVA tenderness." [Tr. 243-44]. She further noted that "I am not sure if he is reliable in his history." [Tr. 243].

### B. Other Evidence

After losing his benefits in 2000, Decedent filed a new application for Social Security benefits on October 4, 2005. [Tr. 124, 114-19]. A hearing was held before ALJ Dickson Grissom on April 22, 2008 in Knoxville, Tennessee and again on August 13, 2008. [Tr. 390; 414]. ALJ Grissom issued an unfavorable decision October 8, 2008, [9-16], but the District Court remanded for failure to adequately consider Dr. Carter's treating physician opinion. [Tr. 471-74]. The case was remanded to ALJ James Dixon who, on December 21, 2012, found that Decedent was "not disabled" and issued an unfavorable decision to that effect. [Tr. 568-74]. Decedent appealed ALJ Dixon's decision, and on July 15, 2013, the Appeals Council informed Decedent it was assuming jurisdiction of the case. [Tr. 575-81; 4343-34B].

10

On December 3, 2013, Plaintiff's counsel informed the AC that Decedent died on November 26, 2013, and that Decedent's wife, Rosalind Rhodes, should be substituted as the party on his claim. [Tr. 433B]. On January 28, 2014, the AC issued it decision, finding Decedent was "not disabled" for the relevant period of October 1, 2000 (the alleged onset date) through September 30, 2005 (the date last insured). [Tr. 422-33A]. The AC found that Decedent was capable of performing light work with additional exertional limitations during the relevant time period. [Tr. 433]. The Appeals Council considered Dr. Carter's treating physician opinion that Decedent satisfied Listing 1.04A but found it unsupported due to Decedent's inconsistent treatment, Dr. Carter's lack of specialization in orthopedics or neurosurgery, and Decedent's improved symptoms documented during examinations. [Tr. 428]. The Appeals Council concluded that Decedent was not disabled and that "there were a significant amount of jobs in the national economy which the claimant could have performed during the period at issue." [Tr. 433-33A].

## V.     POSITIONS OF THE PARTIES

The Plaintiff argues that ALJ Dixon and the AC erred in declining to grant Dr. Carter's opinion controlling weight. The Plaintiff contends that the 2000 application should be granted because the Decedent's condition never improved, benefits were terminated due to lack of compliance with information requests, and that proper consideration of his treating physician's opinion supports a finding of "not disabled."

The Commissioner responds primarily that Plaintiff's brief does not address the proper timeframe or agency decision. The Commissioner emphasizes that the only issue before the

Court is whether the AC's decision that Decedent was not disabled between October 1, 2000 and September 30, 2005 is supported by substantial evidence. Further, the Commissioner argues that the AC provided good reasons for discounting Dr. Carter's treating physician opinion. Finally, the Commissioner contends that substantial evidence supports the AC's decision that there were jobs in the national economy which Decedent could perform between October 1, 2000 and September 30, 2005.

## V.    ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A.  Applicable Dates and Decision for Review

Plaintiff alleges that Decedent was disabled from 1993 through the time of his death and contends that neither ALJ Dixon nor the AC properly considered his treating physician opinions. The Commissioner argues that the Court should limit review to the AC decision and the time between Decedent's alleged onset date of October 1, 2000 through the date last insured, September 30, 2005. The Court concurs.

The Court can only review a "final decision of the Commissioner of Social Security[.]" 42 U.S.C.A. § 405(g). The "Secretary's factual findings are conclusive if supported by substantial evidence." Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). "If the Appeals Council accepts a claimant's request for review and issues a new decision, the issue for review is whether the Appeals Council's findings, not the ALJ's, are supported by substantial evidence." Mullen, 800 F.2d at 546 (citing Crawford v. Astrue, No. 11-226-GFVT, 2012 WL 4498830, at *4 (E.D. Ky. Sept. 28, 2012)). To be eligible for DIB, a

12

claimant must show that she "became 'disabled' prior to the expiration of his insured status." Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 42 U.S.C. § 423(a) and (c); Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988)).

Therefore, the Court finds that the AC decision of January 28, 2014 is the final decision of the Commissioner. [See Tr. 425-33A]. The Court concurs with the AC that the proper period of adjudication is October 1, 2000, the alleged onset date, [Tr. 112], and September 5, 2005, the date Decedent was last insured. [Tr. 108]. Therefore, the only inquiry before the Court is whether the AC's decision that Decedent was not disabled between October 1, 2000 and September 5, 2005 is supported by substantial evidence and adheres to agency procedure. See Mullen, 800 F.2d at 546.

## B.  The Treating Physician Rule

The Court finds that the AC properly applied the treating physician rule. When the AC assumes jurisdiction of a case it is subject to the same standard of review as an ALJ. See Mullen, 800 F.2d at 546. Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine a claimant's RFC. 20 C.F.R. § 404.1527(b). If the opinion of a treating physician is supported by the record, it is entitled to controlling weight. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not

13

garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your

14

treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

Therefore, even if the ALJ fails to properly apply the treating physician rule, if substantial evidence exists to support the ALJ's RFC determination and the ALJ provides sufficient explanation for this basis of the assessment, such an error will be found harmless. See Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804-05 (6th Cir. 2011) (holding that the regulations require only "good reasons" for the weight assigned a treating physician, "not an exhaustive factor-by-factor analysis," and finding that the ALJ's failure to consider the factors set forth in 20 C.F.R. § 404.1527(c) was harmless error because "the ALJ cited the opinion's inconsistency with the objective medical evidence, [Decedent's] conservative treatment and daily activities, and the assessments of [Decedent's] other physicians. Procedurally, the regulations require no more."); Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Plaintiff contends that neither ALJ Dixon nor the AC properly considered Dr. Carter's opinion that Decedent met the criteria for Listing 1.04A. [See Doc. 12-21]. However, the Court has clarified that the only opinion subject to review is that of the AC, and therefore the only question in that regard is whether the AC properly applied the treating physician rule to Dr.

15

Carter. The Court finds in the affirmative.

The AC considered Dr. Carter's opinion that the Decedent satisfied 1.04A and discounted it due to a consideration of the factors enumerated in 20 C.F.R. §§ 404.1527(c) and 416.927(c). [See Tr. 428-29]. The AC noted the length of treatment and treatment relationship, Decedent's frequency of examination, Dr. Carter's specialty, her treatment records, Decedents reported daily activities, and Dr. Carter's assessed functional limitations. [Tr. 428-32]. Specifically, the AC considered Dr. Carter's examinations notes and found that from 2002 through 2004 she "did not describe any musculoskeletal limitations. Dr. Carter noted in June of 2004 that the claimant was intact neurologically." [Tr. 428]. Further, the AC noted that Dr. Carter "saw claimant only once or twice a year, despite information in the record indicating that the claimant had insurance coverage." [Id.]. The AC relied on the "sporadic basis" of Decedent's treatment "during the period at issue" as basis for discounting Decedent's subjective complaints of pain. [Tr. 432]. The AC noted that "Dr. Carter is a general practitioner, not an orthopedic or neurosurgical specialist." [Id.]. The AC considered that while Dr. Carter assessed that Decedent satisfied Listing 1.04A because of "loss of left Achilles reflex and pain and spasm on the left . . . she did not reference any limitation of motion, sensory or motor loss, or positive straight leg raising. Moreover, she did not describe such findings in her treatment notes during the period in issue." [Id.].

The AC went on to consider Dr. Carter's treatment notes subsequent to the relevant timeframe and found that those records "indicate that the claimant's level of functioning was not disabling." [Tr. 430]. The AC also included various self-reported activities included in Dr.

16

Carter's treatment notes, such as Decedent's statements during an examination "that he could not stay long as he was busy building a pool (the claimant subsequently testified that he was not doing the work himself.)" [Tr. 430]. The Decedent also informed Dr. Carter that he was "starting a shop" and the AC found that "[s]uch activities are not consistent with his assertions of inability to focus." [Tr. 432].

The Court finds that the AC's reasoning satisfies the treating physician rule and is supported by substantial evidence. The AC provided thorough and sufficient reasons for the weight assigned to Dr. Carter and specifically addressed each of the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The Court notes that Plaintiff takes issue with the AC's reasoning, specifically arguing that Decedent's lack of treatment and Dr. Carter's status as a general practiner should not discount her opinion. However, it matters not whether Plaintiff or this Court disagree with the AC's decision, the only question before the Court is whether the AC applied correct agency procedure and based its opinion on substantial evidence. See Crisp, 790 F.2d at 453 n.4. On both counts, the Court finds in the affirmative and holds that the AC properly applied the treating physician rule to Dr. Carter.

## C. Substantial Evidence

The Commissioner argues that substantial evidence supports the AC's finding that there were jobs in the national economy which Decedent could perform during the relevant timeframe. [Doc. 15 at 14-15]. The Plaintiff does not raise an argument in regards to step five of the disability analysis, but merely concludes her dispositive motion by arguing that the record does not reflect a finding that Decedent's condition ever improved and that his benefits from 1995

17

should be restored.  [Doc. 13-1 at 22].  The Court will not issue an advisory opinion regarding

the Commissioner's argument as that issue was not raised by Plaintiff.  However, as to Plaintiff's

statement, the Court finds that the AC's decision of January 28, 2014 is the final decision issued

by the Commissioner in this matter and that it is supported by substantial evidence.  The AC

addressed all five steps of the disability analysis, providing thorough and specific reasons for its

decision, and based its determination on substantial evidence, as reflected in the administrative

record.  Any argument to the contrary is without merit.

## VI.     CONCLUSION

Based upon the foregoing, it is **RECOMMENDED**[1] that the Plaintiff's Motion for

Judgment of Plaintiff [**Doc. 13**] be **DENIED** and the Commissioner's Motion for Summary

Judgment [**Doc. 14**] be **GRANTED**.


Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).